Tagged Opinion



**ORDERED in the Southern District of Florida on February 10, 2016.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-24989-LMI

In Re:                                    Chapter 7

PORCHIA DURHAM,

     Debtor.

_____/

PORCHIA DURHAM                          Adv. No.  15-01003-LMI

     Plaintiff/Debtor

v.

HOMESTEAD HOUSING AUTHORITY

     Defendant.

_____/

**MEMORANDUM OPINION IN SUPPORT OF FINAL JUDGMENT AND
DIRECTING FURTHER BRIEFING ON DAMAGES**

This matter came before the Court for trial on November 24, 2015.[1]  For the reasons stated below, judgment will be entered for the Plaintiff on Counts I and III of the Complaint.[2]

On January 5, 2015, Ms. Durham filed this adversary proceeding against the Creditor/Defendant Homestead Housing Authority (the "HHA").  The Complaint (ECF #1) seeks recovery on the following grounds: Count I - Willful Violation of the Automatic Stay 11 U.S.C. §362(a) alleging the HHA continued with an administrative proceeding against Ms. Durham to collect a debt that commenced prior to the filing of the bankruptcy without obtaining relief from stay; Count II - Discrimination 11 U.S.C. §525(a) alleging the HHA, as a government agency, terminated Ms. Durham's Section 8 voucher for failing to pay a debt that was listed in her bankruptcy petition; and Count III -  Violation of the Discharge Injunction 11 U.S.C. §524(a) alleging the HHA continued to hold Ms. Durham liable for a discharged debt.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(b) as this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns the property of the Debtor in that case.

## FACTS[3]

Ms. Durham is a single mother of five minor children and resides in Florida City, Florida 33034. The HHA is a public body corporate and politic organized and existing under Florida Statutes Chapter 421.

---

[1] The Court entered an oral ruling at the conclusion of the trial.  Plaintiff was directed to submit a proposed written ruling to Defendant's counsel and the Court for review and comment, which the Plaintiff did, after a delay of almost two months. Defendant's counsel submitted a competing order. The Court has substantially revised the Plaintiff's submission.

[2] The Court finds it is unnecessary to rule on Count II and declines to do so.

[3] The following constitute this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by virtue of Federal Rule of Bankruptcy Procedure 7052.  In accordance with the Order Specially Setting Evidentiary Hearing dated January 16, 2015, the parties entered into a Joint Pretrial Stipulation on April 1, 2015 (ECF# 29) outlining all facts and issues that were in agreement and which were to be litigated.  The Court has considered the parties' stipulated facts, witness testimony and the parties' exhibits entered into evidence.

Ms. Durham has participated in the HHA's Section 8 Housing Choice Voucher Program ("Section 8") for nine years.  The Section 8 program was established by Congress to provide low-income housing, and is codified in Section 8 of the United States Housing Act of 1937 as amended.  The Section 8 program is administered by local public housing authorities such as the HHA.

Pursuant to the Section 8 program, the HHA enters into a housing assistance payment contract with the qualified participant tenant and her qualified landlord whereby the participant is responsible for paying no more than an established percentage of adjusted gross income towards monthly rent and the balance of the rent is paid by the HHA via a housing assistance payment ("HAP").  Ms. Durham's most recent rental contract with her landlord required monthly payment of $967.00, of which $847.00 was paid by the HHA via the HAP, and $120 was paid by Ms. Durham.

On April 28, 2010, the HHA gave Ms. Durham notice that it would terminate her participation in the Section 8 program on the basis that allegedly she did not report the accurate amount of her income to the HHA in 2008 (the "2010 Notice").  This resulted in Ms. Durham receiving a higher HAP amount than she would have otherwise qualified for.   On June 4, 2010, Ms. Durham and the HHA voluntarily entered into a written monthly repayment plan through which Ms. Durham would repay the HHA the overpayments.  The HHA did not terminate Ms. Durham from Section 8 at that time.

Ms. Durham eventually fell behind on her monthly payment plan.  The HHA began sending Ms. Durham letters notifying her she was behind on her monthly payment plan and needed to bring her account current. The HHA sent Ms. Durham at least four such letters between February 2013 and April 2014.   On or about June 16, 2014, the HHA served Ms.

Durham with notice it was terminating her from the Section 8 program (the "June Notice")

effective August 1, 2014. The June Notice alleged Ms. Durham was "currently in arrears with

Homestead Housing Authority on agreement that was signed on June 4, 2010[*sic*]," and if Ms.

Durham did not pay $5,244.00 on or before June 30, 2014, the HHA would continue with the

termination process. The Executive Director for the HHA, Mr. Shane White, testified that he

personally conducted the investigation into Ms. Durham's file and drafted the June Notice. The

June Notice did not allege any basis for the termination other than the monetary default.

On June 30, 2014, Ms. Durham filed her voluntary petition for bankruptcy under Chapter

7. Ms. Durham listed the HHA as a creditor in schedule F of her petition and included the

arrearage as a debt.[4] The HHA acknowledges it received the notice of the bankruptcy case filing

and the automatic stay order on June 30, 2014.

On July 10, 2014, the HHA served Ms. Durham with another notice (the "July Notice")

notifying her of her final termination from the program. The HHA alleged in the July Notice that

the 2010 Notice advised her that she  failed to report income in 2008 and that she had committed

fraud and abuse of the Section 8 program. The July Notice further alleged Ms. Durham failed to

pay the amount it demanded in the June Notice.  The HHA acknowledges that the "fraud and

abuse" referred to in the July Notice referred to the same event that resulted in the June 4, 2010

agreement. The July Notice was the first time since Ms. Durham entered into the repayment plan

that the HHA sought to terminate Ms. Durham for the 2008 violation and the first time, at least

since the June 4, 2010 agreement, that fraud and abuse were listed as issues. All the other notices

preceding the July Notice were based on monetary defaults.

---

[4] The debt to the HHA was on both the petition (ECF #1) and the amended schedules (ECF #11); however, the debtor mistakenly listed the amount of the claim as $5,744 instead of $5,244.

Mr. White testified that he personally drafted the July Notice.  He testified that he examined Ms. Durham's file prior to and in preparation for drafting the July Notice.  Mr. White also testified that he sent the July Notice with full knowledge of the bankruptcy case, but that he did not consult with bankruptcy counsel.  Rather, Mr. White just asked a few people whether the bankruptcy was an issue, and based on his canvassing of those non-bankruptcy attorney responses, Mr. White fashioned the July Notice to include the fraud allegations.

On July 28, 2014, counsel for Ms. Durham advised the HHA by email that the automatic stay order prevented the HHA from continuing with Ms. Durham's termination from the Section 8 program.  The HHA responded the same day that it was not a creditor, it was not attempting to collect a debt, and the bankruptcy filing and stay order did not apply to the HHA. The HHA also claimed that because Ms. Durham owed money to the HHA it would not to stop the termination proceedings against Ms. Durham. The HHA did not send the HAP to Ms. Durham's landlord for the month of September 2014.  At no time did the HHA seek relief from the automatic stay or object to the discharge during the Chapter 7 proceeding.

On October 6, 2014, Ms. Durham received her bankruptcy discharge. Ms. Durham notified the HHA that the debt had been discharged and asked that the HHA resume the HAP to her landlord.  Ms. Durham notified the HHA that her landlord intended to evict her if the HAP portion of the rent was not paid. The HHA refused to resume the HAP to Ms. Durham's landlord or rescind the termination. The HHA maintained that the bankruptcy filing did not prevent it from terminating Ms. Durham from Section 8 on the basis of fraud and therefore it would not resume the HAP to her landlord.

On October 22, 2014, Ms. Durham's landlord served her with a Three Day Notice to Pay Rent or Deliver Possession ("3-Day Notice") that demanded $1,742.50 in unpaid rent.  Ms.

Durham testified that the amount represented the unpaid HAP. In November 2014, Ms. Durham's landlord filed an eviction against Ms. Durham for non-payment of rent.

Ms. Durham then filed the Complaint (ECF #1) together with an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF #2) (the "Motion") seeking to resume the HAP to her landlord until final resolution of the adversary proceeding. On January 9, 2015, the Court granted Ms. Durham's request for a temporary restraining order (ECF #9). The Court set the Motion for a final evidentiary hearing to occur on February 12, 2015, at 10:00 a.m. (ECF #12). On January 22, 2015, the HHA filed its Motion to Dismiss Adversary Proceeding (ECF#14).

On February 9, 2015, the Court entered an Agreed Order Granting Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF #19) after the HHA reinstated Ms. Durham into the Section 8 Voucher Program. In February 2015, the HHA rescinded the termination, and paid the landlord the rent arrears. The HHA did not pay the attorney's fees and costs incurred by the landlord in the eviction which totaled $408.00. Ms. Durham remained obligated to pay the landlord's attorney's fees and court costs.

On February 17, 2015, the Court denied the HHA's Motion to Dismiss Adversary Proceeding (ECF #23). The HHA filed its Answer on February 18, 2015, asserting six affirmative defenses (ECF #24).[5] The parties then proceeded to trial on the Complaint.

At trial, Ms. Durham testified that she was stressed and upset that she had lost her Section 8 voucher. She testified she was fearful that she and her children were going to be evicted and

---

[5] The first affirmative defense, the doctrine of laches, seeks to limit the scope of actual damages and fees incurred. The fourth affirmative defense, estoppel, asserts the post-petition termination was justified in order to collect restitution resulting from fraud. The third defense addresses Count II the ruling on which is not necessary. The Court rejected the sixth defense in its order denying the HHA's Motion to Dismiss. The Court finds that the HHA has failed to meet its burden to prove any of the remaining affirmative defenses except with the respect to the second and fifth affirmative defenses, the argument and evidence relating to which the Court has not yet considered.

become homeless.  Ms. Durham testified she was feeling anxious about being evicted and had trouble sleeping at nights.  She testified that although she was several months pregnant at the time, she could not gain weight which she attributed to her anxiety and stress related to her termination from Section 8 and the prospect of becoming homeless.

The HHA argues Ms. Durham waited too long to bring her adversary claim and so should not recover her damages from the eviction.  The HHA has also argued it was attempting to collect restitution, not a debt, because Ms. Durham's failure to repay the HHA the amounts owed under the repayment plan was an act of theft and that she committed fraud by not reporting her 2008 income accurately.

## Analysis

The filing of a bankruptcy case operates as an automatic stay against most entities from, among other actions, continuing or commencing administrative proceedings against the debtor that were or could have been commenced before the bankruptcy filing. 11 U.S.C. §362(a).  Once a bankruptcy case is concluded, a debtor is protected from any action to collect those obligations that are discharged in the bankruptcy; the discharge injunction enjoins, among other things "the commencement or continuation of any action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor …." 11 U.S.C. §524(a)(2).

If a party willfully violates the automatic stay a debtor who is injured by the willful violation is entitled to recover his or her actual damages including costs and attorneys' fees, and if appropriate, may also recover punitive damages. 11 U.S.C. §362(k).  A violation of the automatic stay is willful if the party knew the automatic stay was invoked and intended the actions which violated the stay.  *In re Jove Engineering, Inc.*, 92 F.3d 1539, 1555 (11th Cir. 1996).  A creditor must not only cease the act that would violate the stay, "it must also take all

necessary affirmative action to stop the proceedings which are in violation of the automatic stay." *In re Briskey,* 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001).  To avoid a violation, the post-petition action must fall under an exception in 11 U.S.C. §362(b) or else the party must obtain relief from the stay under 11 U.S.C. §362(d).  *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1268 (11th Cir. 2014).

There is no dispute that the HHA violated the automatic stay as well as the discharge injunction. The HHA continued the termination proceedings against Ms. Durham with knowledge that the automatic stay was in effect and without obtaining relief from the stay. The HHA took no action to stop the proceeding or attempt to correct the action when notified of the automatic stay violation. None of the HHA's actions fall within any exception to the automatic stay.  The HHA's belated attempt to recharacterize its collection efforts as its exercise of some kind of restitution or police power fell flat when it was clear from the evidence that at the time the bankruptcy case was filed the only issue between the HHA and the Debtor was a monetary issue for past due amounts.

It is also undisputed that the HHA continued to hold Ms. Durham responsible for the debt after being notified the debt had been discharged.  The HHA's argument that the debt was restitution resulting from fraud is without merit. The HHA did not dispute the discharge through the bankruptcy proceeding or file a proof of claim, despite receiving ample notice and opportunity to do so.[6] The HHA provided no legal authority showing it could treat the instant debt as criminal restitution in this case.  Finally, the HHA presented no evidence showing that it had ever alleged Ms. Durham committed fraud or abuse after the June 4, 2010 agreement, prior to her filing her Chapter 7 petition.

---

[6] The HHA's argument that it would have done so if Ms. Durham filed her complaint earlier is meritless.

The Court further finds that Ms. Durham was injured by the automatic stay violation and the violation of the discharge injunction. However, Ms. Durham failed to prove that she suffered significant emotional distress that was causally connected to the HHA's willful violation of the automatic stay to deem it as "actual damage."[7] Nonetheless, Ms. Durham did incur actual damages resulting from her liability to pay her landlord's attorneys' fees and court costs. Thus, at a minimum Ms. Durham is entitled to actual damages in the amount of $408.00. Ms. Durham also claims she is entitled to attorney fees and costs notwithstanding that she was represented by a pro bono legal services provider – Legal Services of Greater Miami. However, Ms. Durham provided no evidence as to the amount of fees to which she would be entitled. Finally, Ms. Durham argues that she is entitled to punitive damages due to the egregious nature of the HHA's actions.

At the conclusion of trial the Court directed the parties to provide supplemental briefing on the attorney fees and punitive damages.

IT IS ACCORDINGLY ORDERED AND ADJUDGED:

1. On Count I of the Complaint, the Court finds that the HHA willfully violated the automatic stay, 11 U.S.C. §362(a), for which Ms. Durham was injured.

2. On Count III, the Court finds the HHA willfully violated the discharge injunction, 11 U.S.C. §524(a), for which Ms. Durham was injured.

3. The HHA is ordered to pay Ms. Durham $408.00 in actual damages.

4. Ms. Durham is the prevailing party on her claims and is entitled to an award of attorneys' fees and costs pursuant to 11 U.S.C. §362(k) and the Court reserves jurisdiction to

---

[7] To recover "'actual' damages for emotional distress under §362(k), a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the automatic stay." *Kondaur Capital Corp.,* 750 F.3d at 1271 (citations omitted) (holding general evidence of stressing out, including debtors' difficulty interacting with their children was not sufficient to support a recovery of actual damages based on emotional distress).

award same should counsel for Ms. Durham submit the appropriate legal and factual support for

the request.[8]

5.      The Court reserves jurisdiction to consider an award of punitive damages.

6.      The parties are to submit legal memoranda on whether punitive damages and

attorney fees should be awarded and, if so, the amount of each, within 21 days of the entry of this

Order.

# # #

Copies to:
Porchia L. Durham, Debtor
Stephen P. Lewis, Esq.
Rex Russo, Esq.

*Attorney Lewis is directed to serve a copy of this Order upon all parties in interest and file a certificate of service with the Clerk of Court.*

---

[8] If the Court determines that attorney fees may be awarded, the Court will reduce any fees otherwise allowable to reflect the inexcusable delay in submitting the proposed post trial order the Court requested.